T.C. Summary Opinion 2001-172


UNITED STATES TAX COURT


MARY S. AND GREGORY G. WEBB, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5040-00S.                    Filed October 25, 2001.


Gregory G. Webb, pro se.

<u>A. Gary Begun</u> and <u>Robert D. Heitmeyer</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income taxes of $1,395 and $1,132 for the 1996 and 1997 taxable years, respectively.

After concessions by the parties,[1] the issues for decision are:  (1) Whether petitioners are entitled to claim a "long-term capital loss" attributable to a nonbusiness bad debt; and (2) whether petitioners are entitled to Schedule A, Itemized Deductions for 1996 and 1997.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in South Haven, Michigan. Petitioners are husband and wife.  References to petitioner in the singular are to Gregory G. Webb.

During the years at issue, petitioner was a boilermaker. Petitioners also operated a small "Ma and Pa" grocery store in South Haven, Michigan.

On September 8, 1987, petitioner lent Charles Garner (Mr.

---

[1]  Respondent concedes that a mathematical error was made in the notice of deficiency.  The correct amount disallowed on petitioners' Schedule A, Itemized Deductions, for 1996 is $3,587, which remains in dispute.

Petitioners concede the disallowance of business losses claimed on their Schedule C, Profit or Loss From Business, in the amounts of $2,603 and $1,479 for taxable years 1996 and 1997, respectively.

The parties also concede that the disallowed amount of petitioners' itemized deductions for 1997 should be reduced to $1,658, which remains in dispute.

Garner) $20,000, as memorialized in a promissory note signed by Mr. Garner. The loan was unsecured and due 23 days later on October 1, 1987. The purpose of this loan was to assist financially Mr. Garner, who was "about to lose his home and he needed the money." Mr. Garner was petitioner's friend and "fellow boilermaker". Petitioner testified that he decided to help Mr. Garner because Mr. Garner had indicated that he needed the money for a short period of time. Petitioner could not recall where Mr. Garner was going to get the money to repay him. Mr. Garner died in 1994. No payments of interest or principal were made on the loan prior to or after Mr. Garner's death.

Prior to his death, Mr. Garner assisted petitioner in negotiating a workers' compensation settlement with petitioner's former employer, Precipitator Maintenance. Petitioner did not hire an attorney or other representative to assist him in this matter.

Petitioners timely filed their Federal income tax returns for taxable years 1996 and 1997. Petitioners reported a long-term capital loss attributable to a bad debt of $20,000 on the Schedule D attached to their 1996 Federal income tax return and a $17,000 long-term capital loss carryover on the Schedule D, Capital Gains and Losses, attached to their 1997 Federal income tax return. Because petitioners did not have offsetting long-term capital gains in either year, petitioners claimed a long-

term capital loss of $3,000 in each year.

In the notice of deficiency, respondent disallowed the $3,000 capital loss for each of the taxable years 1996 and 1997. Respondent also made the following adjustments to petitioners' Schedule A deductions:[2]

|  | 1996 | | | 1997 | | |
|---|---|---|---|---|---|---|
|  | Claimed | Allowed | Dis-allowed | Claimed | Allowed | Dis-allowed |
| Lodging | $2,488 | $-0- | $2,488 | $1,058 | $-0- | $1,058 |
| Meals & entertain-ment | 1,216 | 1,072 | 114 | -- | -- | -- |
| Protective clothing | 693 | -0- | 693 | 529 | -0- | 529 |
| Union dues | 292 | -0- | 292 | 71 | -0- | 71 |
| Total | $4,689 | $1,072 | $3,587 | $1,658 | $ -0- | $1,658 |

## Bad Debt Deduction

Section 166(a) generally allows a deduction for debts that become wholly or partially worthless within the taxable year. A business bad debt is fully deductible from ordinary income; however, a nonbusiness bad debt of a taxpayer other than a corporation is treated as a short-term capital loss. Sec. 166(d)(1). A nonbusiness bad debt is defined as a debt other than: "(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the

---

[2]     Amounts reflect concessions made by the parties.

taxpayer's trade or business." Sec. 166(d)(2). To qualify for a deduction for a worthless nonbusiness debt, the individual taxpayer must show that the debt became totally worthless within the taxable year in which the deduction is claimed because no deduction is "allowed for a nonbusiness debt which is recoverable in part during the taxable year." Andrew v. Commissioner, 54 T.C. 239, 245 (1970); sec. 1.166-5(a)(2), Income Tax Regs. A debt is not worthless because the debtor is having financial difficulties. Kelly v. Commissioner, T.C. Memo. 1992-452.

Only a bona fide debt qualifies for purposes of section 166. A bona fide debt "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. Whether the parties actually intended the transactions to be loans depends on whether the advances were made "with a reasonable expectation, belief, and intention that they would be repaid." Goldstein v. Commissioner, T.C. Memo. 1980-273. The existence of a bona fide debt is a factual inquiry that turns on the facts and circumstances of the particular case. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 376-377 (1973). The objective indicia of a bona fide debt include whether a note or other evidence of indebtedness existed and whether interest was charged. Clark v. Commissioner, 18 T.C. 780, 783 (1952),

affd. 205 F.2d 353 (2d Cir. 1953). We also consider the existence of security or collateral, the demand for repayment, records that may reflect the transaction as a loan, and the borrower's solvency at the time of the loan. Id.

Petitioner contends that he should be allowed to claim a nonbusiness bad debt deduction pursuant to section 166 for the loan to Mr. Garner.[3] We disagree.

Petitioner failed to establish that the loan to Mr. Garner was a bona fide debt, or in the alternative, that such debt became worthless in 1996. At trial, petitioner testified that the loan was made to assist Mr. Garner in his personal financial situation. The record includes a $20,000 promissory note dated September 8, 1987, signed by Mr. Garner. The note, bearing interest at 8 percent, was due October 1, 1987. Petitioners never received any interest or payment of principal from Mr. Garner. Further, petitioners failed to take legal action to collect the purported debt from Mr. Garner during his lifetime or from his estate. Lencke v. Commissioner, T.C. Memo. 1997-284. Mr. Garner passed away in 1994, 7 years after the initial loan was purportedly created. Although death of the debtor may indicate that a debt is worthless, petitioner has not shown that collection efforts against Mr. Garner's estate would have been

---

[3] Although petitioner reported a $3,000 long-term capital loss, pursuant to sec. 166 a nonbusiness bad debt would yield a loss of $3,000 per year as a short-term capital loss.

futile. Magnus, Mabee & Reynard, Inc. v. Commissioner, 1 B.T.A. 907 (1925).

We also find strange petitioner's claim for bad debt 9 years after the purported debt became due. When the Court asked petitioner why he waited until 1996 to claim the loss, petitioner answered: "I just realized at that point in time I was never going to get the money and somebody mentioned that it was a tax write off."

Based upon the above, we find that the petitioners failed to prove that the loan was a bona fide debt and that the debt became worthless in 1996. Accordingly, petitioner is not entitled to the bad debt loss during the years in issue. Respondent is sustained on this issue.

Schedule A Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[4] A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Section 162(a) allows a taxpayer to deduct all ordinary and

---

[4] Sec. 7491 does not alter the taxpayer's burden of proof where the taxpayer has not complied with all substantiation requirements. Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. 111, 113 (1933).  To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved.  Deputy v. Du Pont, 308 U.S. 488, 495 (1940).  No deduction is allowed for personal, living, or family expenses. Sec. 262(a).

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it, the Court is permitted to make as close an approximation as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The estimate must have a reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  However, section 274 supersedes the doctrine in Cohan v. Commissioner, supra; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), and requires strict substantiation of expenses for travel, including lodging, and meals and entertainment.

A taxpayer is required by section 274(d) to substantiate a claimed expense by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the

amount, time, place, and business purpose of the expense.  Sec. 274(d).  Even if such an expense would otherwise be deductible, the deduction may still be denied if there is insufficient substantiation to support it.  Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Petitioners deducted unreimbursed employee business expenses for protective clothing of $693 and $529 for tax years 1996 and 1997, respectively.  Section 162 allows taxpayers to deduct amounts for work clothing by establishing that the clothing (1) was required or essential in the taxpayer's employment, (2) was not suitable for general or personal wear, and (3) was not so worn.  Yeomans v. Commissioner, 30 T.C. 757, 767 (1958); Kozera v. Commissioner, T.C. Memo. 1986-604.  Petitioner testified that he purchased leather work clothing, including coveralls, and leather gloves for protection when welding.  He further testified that these items were often damaged or "burnt up" throughout the year.  We are satisfied that petitioner did incur some expenses for these items.  Cohan v. Commissioner, supra.  We find that petitioner incurred the expenses in the amounts claimed in their 1996 and 1997 income tax returns.  Kozera v. Commissioner, supra.

Petitioners deducted lodging expenses of $2,488 and $1,058 for 1996 and 1997, respectively, and a meals and entertainment expense of $114 for 1996.  At trial, petitioner testified that he kept a diary of lodging expenses for the years in issue; however,

he failed to bring the diary to court.  He also testified that he based the expense on the number of days away from home for business.  Petitioner testified that he was away from home 38 nights in 1996.  The record is absent any information as to the number of nights petitioner was away from home in 1997.  Section 274(d) provides a strict substantiation rule which does not permit us to make a Cohan estimation.  Cohan v. Commissioner, supra.  Petitioner is allowed a deduction only for travel expenses properly substantiated by receipts or other evidence corroborating his own statement.  Because petitioner is unable to substantiate these deductions, he is not entitled to deduct the amounts claimed as miscellaneous itemized deductions.

We also find that petitioner failed to substantiate the meals and entertainment expense deduction.  Accordingly, we cannot allow him the deduction for meals and entertainment in 1996.

At trial petitioner substantiated union dues of $221 for 1996.  Petitioner failed to substantiate the dues claimed for 1997.  Accordingly, petitioner is entitled to deduct $221 for union dues incurred in 1996 and none for 1997.

We have considered all of the other arguments made by petitioners, and, to the extent we have not addressed them, conclude they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.